REID, Judge.
This suit was originally brought by Sam Alleman to recover for personal injuries, medical expenses and loss of wages which resulted from an accident which occurred on the 15th day of August, 1957. Mr. Alle-man who was the owner and operator of a 1954 Ford car, had been driving in his car in an easterly direction along Louisiana Highway 1004 in Assumption Parish. At the same time Kiah Clair was proceeding in a northerly direction along Hackberry Road which ended at a T intersection with Highway 1004. Kiah Clair was an employee of Dugas & LeBlanc, Ltd. and was driving a 1949 Dodge truck owned by his employer and insured by Houston Fire & Casualty Insurance Company. The truck was driven from behind a stand of sugar cane into Highway 1004 in an effort to make a left turn into the highway and collided with the oncoming car driven by Mr. Alleman. The items of damages for the injuries sustained by Alleman in this collision, the resulting loss of wages, medical expenses and damages to his car are the sole question before this court on appeal. After this case had been partially tried, on the merits, Sam Al-leman died and his mother, Mrs. Claiborn Alleman was properly substituted as party-plaintiff.
Judgment was rendered in the trial court for Mrs. Claiborn Alleman in the amount of $10,959.55, with legal interest thereon from date of judicial demand until paid. The medical expert fees totalling $300.00 were taxed as costs of the suit.
The trial court in its reasons for judgment broke down the award. It awarded $8500.00 for the continuous pain and nervousness suffered by Sam Alleman as a result of the accident, $240.00 for loss of wages, $1,737.70 for the doctor’s bill and hospital bill incurred by Alleman, subsequent to the accident. In addition, $481.85 was awarded for the damages to Sam Alle-man’s car.
*848 The defendants, Houston Fire & Casualty Insurance Company and Kiah Clair, Jr., perfected a suspensive appeal from this adverse judgment, but admitted liability for the accident. Plaintiff answered the appeal and asked for an increase in the award. Therefore, the only question before this court on appeal is the correctness of the amount awarded by the trial court.
To begin with, it should be noted that the item of $481.85 for damages to Alleman’s car is conceded by both parties to be correct. In addition, the item for medical treatment and hospitalization of $1,737.70 is also correct. Although the trial court found that this bill was high considering the nature of the treatment granted to Mr. Alleman, it found that the defendant had made no opposition to its reasonableness and for that reason it was allowed. Counsel for defendants did introduce proof that Alleman had obtained funds from his own liability insurance company which amounts were sufficient to pay the bill presented by Dr. Daigle, for his professional services and for hospital care. Counsel for defendant also argues that the hospitalization was primarily to treat a prior condition “which was not in any manner aggravated by the accident” and argues that $200 would be adequate to cover the medical expenses actually resulting from the wreck. In the first place, any amounts obtained by Alle-man from his own insurance company, as a result of premiums which he paid prior to the accident, would not be available to reduce the defendant’s liability herein. In addition, the $400 which he obtained from his employee through its group insurance should be similarly treated. In this regard, the attending physician’s testimony is in the record and does not support defendant’s contention that the injuries sustained by plaintiff were minor in nature and did not require hospitalization except “perhaps for a day or two for observation.”
The fact that Mr. Alleman’s own automobile liability insurance company paid all of the doctors bills and hospital expenses in connection with his injury also substantiates Alleman’s claims in this respect.
It is felt that the plaintiff successfully sustained the burden of proving that his medical bill and hospital expenses resulted from injuries which he received in the accident which occurred on August 15, 1957. As noted by the District Court the reasonableness of these charges was not put at issue on the trial on the merits. Hence, the trial court’s judgment on this item is found to be correct.
Counsel for defendant makes no argument that the award for $240.00 for loss of wages is excessive. Neither does plaintiff’s counsel contend that this item is incorrect nor ask that it be increased. Accordingly, the trial court’s judgment is found to be correct on this item also.
There is considerable evidence in the record in regard to illnesses suffered by Alle-man prior to 1957. These are considered to be too remote and unconnected with the issues presented in this case to be of any significance. Therefore, these prior accidents and injuries will be disregarded. The first pertinent evidefice in regard to plaintiff’s illnesses which is felt to be pertinent is the portion of the record which deals with Alleman’s visits to Dr. Billeaudeaux in the early part of 1957.
Alleman went to see Dr. Billeaudeaux with “much coughing and pain in the chest.” The doctor felt at first that Alle-man had a bad cold, but when he returned in much worse condition two days later, the doctor suspected that his patient had pneumonia. Upon examination, however, the doctor found that Alleman was suffering from “very, very high blood pressure, 250, * * * took an x-ray of the chest for the possibility of pneumonia and * * * found bronchial thickening, something with his bronchial tubes, in the center of the chest and a great deal enlargening of the heart.” He was hospitalized under Dr. Billeaudeaux’s care from February 27, 1957, until March 6, 1957.
*849 Since the treatment he was receiving did not seem to significantly relieve his complaints, Alleman was referred to Dr. Walter J. Trautman, Jr., who is a specialist practicing in New Orleans, Louisiana. The doctor found that the patient’s heart was grossly enlarged to the left, his blood pressure was too high and that the electrocardiogram indicated digitalis effect and severe ventrical sprain. The specialist also found that Alleman also suffered from “terminal Chronic glomerurol nephritis with well controlled cardiac decompensation,” hut did not rule out the possibility of malignant hypertension. He felt that complete bed rest would not benefit Alleman and recommended that the patient “gradually increase his activity short of fatigue and even go back to light work.” He also stated that drastic reduction of Alleman’s blood pressure would hasten renal (or kidney) failure. Therefore, a cautious use of Inver-stine to carefully control the blood pressure in addition to his present medication was advised though “his prognosis is poor.”
Thereafter, Alleman was treated by Dr. Billeaudeaux on several occasions in May, in April and in June of 1957. Apparently, the treatments consisted of administration of diuretic drugs and digitalis. Dr. Bil-leaudeaux did not state that Alleman complained of chest pains at this time. It should be noted that Dr. Billeaudeaux did not treat nor examine Alleman after June of 1957.
Apparently the next date upon which Alleman received any medical treatment (other than the drugs prescribed for his condition which he took orally) was on August 15, 1957, immediately after the wreck. At this time he was taken to St. Elizabeth Hospital in Paincourtville, Louisiana. Dr. Jules W. Daigle was his attending physician. The pertinent portion of Dr. Daigle’s report reads as follows:
“This patient was admitted to St. Elizabeth Hospital on August 15, 1957 at approximately 12:15 P.M. In severe shock, acute crushing injury of chest (anterior chest wall) with internal injuries, acute traumatic injury with lacerations, abrasions and contusions of left knee and leg. Acute traumatic injury of face with hemorrhage from both nostrils, acute traumatic injury with laceration of sorsum of left hand, acute traumatic injury (whiplash) of neck (cervical) and upper thoracic vertebrae. Acute severe hypertensive cardiovascular disease (blood pressure 286/152) associated with markedly enlarged heart.
“He was given treatment for shock, then all wounds were treated, numerous x-rays as well as egg’s were taken. No evidence of fracture was found thus far.
“He was observed carefully continuously for the first forty-eight hours by myself as well as private duty nurses. He was kept at absolute bed rest and later when permissable narcotics for the relief of pain was given as there was no cerebral concussion.
“He has been kept at absolute bed rest and his condition thus far is satisfactory. Incidently he is an extremely rugged overweight individual whose weight is 19714 lbs. and height 5 ft. 7 in.
“Since this time Mr. Sam Alleman has returned with but one or two exceptions daily for physical therapy. On October 31, 1957, I called and made an appointment to Dr. Walter J. Traut-man, Jr. of 1444 Delachaise St., New Orleans, La., November 2, 1957. He was seen by Dr. Trautman who stated that his chief complaint of sternal and persisternal pain was directly related to his accident and represents a residual traumatic osteochondritis. He also stated that Mr. Alleman was more tense than on his last visit to him and in all probability this too is related to his recent accident.
“He instructed me to continue the physical therapy as well as the same *850 medicines and also added one new medicine that he gave the patient.
“At the present time Mr. Alleman is still suffering with sternal and peri-sternal pain and is still reporting regularly for physical therapy treatment.”
Upon testifying on the trial on the merits, Dr. Daigle enlarged and explained the above report in detail. He also revised one point in his original report. It is this court’s opinion that in stating that Alleman did suffer a slight concussion, the doctor explained his statement in his report. Because of his high blood pressure and the semi-comatose condition in which Dr. Daigle found Alleman, he feared severe concussion and resulting sudden death. He explained that he did believe that Alleman suffered a mild concussion in the wreck. This finding is substantiated by one of the witnesses to the wreck who stated that when he first saw Mr. Alleman after the wreck he appeared to be dead. Apparently, Alle-man was knocked out by the force of the impact. The fact that he had face injuries also support this finding.
Dr. Daigle referred Alleman to Dr. Trautman who had treated him before as soon as possible. His report to Dr. Daigle was similar to the other report in regard to the earlier symptoms, but he made several additional significant findings:
“I did not repeat his cardiogram or chest film since they were so recently done by you, but there was no significant change from March 1957. His NPN was 58mg%. His PSP was only 5% in one hour. His urine showed a rare WBC, many hyaline and coarsely granular (renal failure) casts.
“With these findings I am certain that his terminal chronic glomerular nephritis has progressed since his last visit here. His chief complaint of sternal and peristernal pain I think is directly related to his accident and represents a residual traumatic osteo-chondritis. Certainly he is more tense than on his last visit to me and in all probability this too is related to his recent accident.
“I suggest that he continue to take the medications he has been on and think that addition of a tranquilizer life Trilafon 4 mg. four times daily would be helpful.”
Defendant’s counsel contends that Dr. Trautman found no significant change in Alleman’s condition except that it was “progressing in the manner in which he had expected it to progress when he first saw him.” Though defendant’s counsel had to admit that traumatic osteochondritis was also found, he contends that this diagnosis was based completely upon Alleman’s complaints of pain. It is felt that this is not a fair summary of Dr. Trautman’s report and testimony in this regard. As noted by the trial judge, Dr. Trautman based his opinion on at least one objective symptom and that was Alleman’s increased tenseness. Another objective symptom was the injury itself.
Dr. Billeaudeaux who did not examine Alleman after the accident testified at length concerning Alleman’s condition at this time. The gist of his testimony was that Alleman’s injuries were not the cause of the chest pains of which he continually complained. However, it is felt that this doctor’s testimony on this point is not too persuasive for three reasons. He did not examine nor treat Alleman during this period and he is not a specialist. The third reason in his manner of testifying in that he was apparently uncooperative and all but absolutely refused to answer hypothetical questions.
Counsel for plaintiff made the following observations concerning the report of Dr. O. L. Pollingue, an orthopedic specialist, who examined Alleman at defendants’ request on March 26, 1958:
“The report of the doctor is in evidence as D-3. Observe that he (Alle-man) denied having any previous difficulty with the chest when he was examined by the doctor. The doctors, ortho *851 pedic experts, gave him a full and thorough examination and concluded that there was no basis for his complaint and, as a matter of fact, that his complaint of pain in the chest wall was without foundation. Read the report of the doctor. Although he made complaints of pain, the doctor said:
“ ‘The lower chest could be squeezed so that the anterior chest bulged considerably and the patient did not flinch on this maneuver but did complain of pain in the anterior chest. There was a full range of cervical motion with complaint of slight pain in the anterior chest.’
“In concluding, the doctor said that all of his complaints were on a subjective basis and could not be backed up from an orthopedic standpoint. All motions of the shoulder as well as of the cervical spine caused the man to complain of pain in the anterior chest wall.
“ ‘Anytime this man’s spine was put through any range of motion, he again complained of pain in the anterior chest and yet I am certain that certain of these motions caused no pain on the chest wall whatsoever.’ ”
Dr. Pollingue’s report, by itself, is very favorable to defendant’s view. However, it is felt to be particularly significant that Alleman did not complain of pain during the late spring and early summer of 1957, but continually complained of chest pains from that date of the accident to the date of his death. Nor did Alleman appear to be a malingerer or one to exaggerate complaints since he complained chiefly of his chest pains after he had recovered from the effects of the accident, and he worked steadily to the time of his death. Another fact that weakens the report somewhat of Dr. Pollingue was that fact that it was made available to the court by written report alone. Not having the benefit of the cross-examination of the doctor and the opportunity to observe his personal demeanor had the effect of lessening the effect of his observations.
There was considerable lay testimony in the record presented herein and all of it favored Alleman’s credibility and good faith with the possible exception of the testimony of Edmund Campo, Alleman’s foreman when he worked as a pipefitter’s helper after the accident. At the time of the trial, Campo was still employed by Dugas & Le-Blanc. His testimony seemed guarded. The gist of his testimony was that Alleman did the same kind of work after the accident as he had before the accident and did not complain of pain. It is significant that only Campo was called on this point since there were several others in his crew. However, Campo’s superior stated that he had advised Campo to let Alleman gauge his own work. This was when Alleman first returned to Campo’s crew after the accident. Just prior to that Alleman had attempted to operate a crane, but was unable to do the work. After he was forced by his condition to stop operating the crane, he had to take off several days to recuperate. Again, after the first portion of the trial on the merits when Alleman’s condition was described in detail by the doctor, his superiors ordered that he do nothing hut light work. The trial court believed Alleman’s sister when she stated that she frequently gave heat treatments to her brother to relieve his chest pains. This finding was made although the sister made several conflicting statements concerning the exact number of times a week she usually gave these treatments. Taking into consideration the limited education of this lady, we feel that the court was more than justified in believing her despite the conflicts in her testimony.
No relationship between injuries sustained in the accident and the illnesses causing the death of Alleman was found by the trial court. This finding is subscribed to by defendant’s counsel. The attorney for plaintiff contends that there was a casual connection between the injury and the death. This may well have been true, but *852 there is no substantial medical evidence in the record upon which to base such a finding. Even Dr. Trautman who stated that it was possible that this was the case, said he would not state definitely that this connection existed. Dr. Trautman in his letter of November 6, 1957, quoted infra, indicates that there were no significant changes in the chest films or cardiogram from March, 1957, until the date those tests were run by Dr. Daigle after the accident. In addition, the consensus of Alleman’s attending physicians was that Mr. Alleman was a very sick man prior to August 15, 1957, and that he would have died of the heart condition and related kidney trouble from which he suffered even though he had not been in an accident.
Not one of the doctors who testified stated categorically that he felt that the date of Alleman’s death was hastened by an aggravation of the pre-existing condition by the injuries and shock suffered in the accident. For these reasons, the trial court’s findings on this point are felt to be justified by the record as presented herein.
In summary, it is felt that plaintiff received fairly severe injuries in the accident which occurred August 15, 1957. These included a slight concussion, nosebleed, contusions and abrasions of the face and other portions of his body, specifically including his hand, crushing injuries to his chest, whiplash injuries to his neck, injury to his left knee and shock resulting from his injuries. His complaints of nervousness, intermittent headaches, pain in his neck upon turning his head to the extreme left or right, and almost continuous chest pains persisted although his other complaints, in time, became minimal or disappeared entirely. He took tranquilizers and pain pills along with his other medications to the day he died. His knee gave him some trouble in that it tired easily and gave way on him from time to time. As stated above, it is felt to be highly significant that Alleman had no significant chest pains, except on one occasion prior to the accident and, by contrast, had continuous pains in his chest thereafter. Both medical and lay testimony also preponderate in favor of Alleman.
It is quite difficult to put a dollar value upon pain and suffering. Taking into consideration the record as a whole, and the relatively short time which plaintiff lived after the accident, it is found that the trial judge’s award for this item of damages is neither excessive, nor inadequate. There is not felt to be manifest error in the amount set. We do not feel that an increase in the award is warranted.
Accordingly, the judgment of the trial court is affirmed and defendants are ordered to pay all costs of this appeal.
Affirmed.